UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| _____ : <br> GAIL HELIJAS, as Administratrix of the Estate of : <br> LUCKY LEE WILKINS, Jr., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> CORRECTIONAL MEDICAL CARE, INC., : <br> EMRE UMAR, MARIA CARPIO, : <br> JANE DOE NUMBER ONE, an employee of : <br> Correctional Medical Care, Inc., whose identity : <br> cannot presently be determined, : <br> SUSAN MORGAN, : <br> CARLOS VALLE, : <br> ELLIS HOSPITAL, : <br> JOHN DOES 4-5, employees of Ellis Hospital : <br> whose identities cannot presently be determined, : <br> SCHENECTADY COUNTY, : <br> DOMINIC D'AGOSTINO, JIM BARRETT, : <br> : <br> Defendants. : <br> _____ : | **FIRST AMENDED COMPLAINT** <br><br> Civil Action No.: 1:15-CV-1049 (GTS/DJS) <br><br><br><br><br><br> **JURY TRIAL DEMANDED** |

Plaintiff Gail Helijas, as Administratrix of the Estate of Lucky Lee Wilkins, Jr., through

counsel, the Law Offices of Elmer Robert Keach, III, PC, hereby complains and alleges regarding

the Defendants' conduct as follows:

**<u>JURISDICTION</u>**

1.      This Court has jurisdiction over this action pursuant to the provisions of 28 U.S.C.

§§ 1331, 1341, 1343 because it is filed to obtain compensatory and punitive damages for the

deprivation, under color of state law, of the rights of citizens of the United States secured by the

Constitution and federal law pursuant to 42 U.S.C. § 1983.

1

2.      This Court also has supplemental jurisdiction over claims asserted in this action under New York State law pursuant to 28 U.S.C. § 1367. A timely Notice of Claim was filed in this action. The County of Schenectady subsequently conducted a Gen. Mun. Law Section 50-h hearing prior to the filing of this action.

3.      Plaintiff Gail Helijas is the mother of the decedent Lucky Lee Wilkins, Jr. Plaintiff obtained Temporary Limited Letters of Administration on Behalf of the Estate of Lucky Lee Wilkins, Jr. on August 25, 2015.

4.      Venue is proper under 28 U.S.C. § 1391 (e)(2) because the events giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

5.      Plaintiff Gail Helijas is a citizen of the United States and currently resides in Schenectady County. Plaintiff is the Administratrix of the Estate of Lucky Lee Wilkins, Jr. Decedent Lucky Lee Wilkins died while in the custody of the Schenectady County Jail on May 28, 2014.

6.      Defendant Correctional Medical Care, Inc. is a corporation duly licensed to conduct business in the State of New York, with its principal place of business being 920 Harvest Drive, Suite 120, Blue Bell, Pennsylvania.

7.      Defendant Emre Umar was and remains employed as the duly appointed president of Correctional Medical Care, Inc. with his principal place of business being 920 Harvest Drive, Suite 120, Blue Bell, Pennsylvania.

8.      Defendant Maria Caprio was and remains employed as the duly appointed Chief Executive Officer of Correctional Medical Care, Inc. with her principal place of business being 920 Harvest Drive, Suite 120, Blue Bell, Pennsylvania.

9.      At all times relevant herein, and upon information and belief, Defendant Jane Doe Number One was employed by Correctional Medical Care, Inc., as medical staff, with her principal place of business being 320 Veeder Avenue, Schenectady, New York.  Plaintiff cannot presently determine the identity of this individual, except to say that she was responsible for providing medical treatment to Lucky Lee Wilkins on May 16, 2014.

10.     At all times relevant herein, and upon information and belief, Defendant Susan Morgan was employed as a Licensed Clinical Social Worker by Correctional Medical Care, Inc., with her principal place of business being 320 Veeder Avenue, Schenectady, New York.

11.     At all times relevant herein, and upon information and belief, Defendant Carlos Valle was employed as a physician by Correctional Medical Care, Inc., with his principal place of business being 320 Veeder Avenue, Schenectady, New York.  Defendant Valle was, upon information and belief, responsible for providing mental health care at the Schenectady County Jail, and for supervising mental health staff employed by CMC at the County Jail.

12.     Defendant Ellis Hospital is a domestic not-for-profit corporation organized pursuant to the laws of the State of New York, with its principal place of business being 1101 Nott Street, Schenectady, New York. Upon information and belief, and at all times relevant herein, Ellis Hospital was responsible for providing mental health care to detainees at the Schenectady County Jail.

13.     At all times relevant herein, and upon information and belief, Defendant John Does 4-5 were employed by Ellis Hospital as medical staff, with their principal place of business being

1101 Nott Street, Schenectady, New York. Plaintiff cannot presently determine the identity of these individuals, except to say that these individuals were responsible for providing Lucky Lee Wilkins, Jr. mental health and/or medical treatment prior to his death. Plaintiff believes she will be able to identify these individuals upon receipt of the Defendants' initial disclosures and/or upon receipt of medical records from Ellis Hospital.

14.     Defendant County of Schenectady is a municipality duly incorporated under the laws of the State of New York, with its principal place of business being 620 State Street, Schenectady, New York.

15.     Defendant Dominic D'Agostino was and remains employed as the duly appointed Sheriff of Schenectady County, with his principal place of business being 320 Veeder Avenue, Schenectady, New York.

16.     Defendant Jim Barret was and remains employed as the duly appointed Jail Administrator of the Schenectady County Jail, with his principal place of business being 320 Veeder Avenue, Schenectady, New York.

## FACTS

17.     Decedent Lucky Lee Wilkins, Jr. ("Mr. Wilkins"), a 29 year old man with two children, committed suicide while in the custody of the Schenectady County Jail on May 28, 2014.

18.     During the course of his incarceration at the Schenectady County Jail, and in particular towards the end of his life, Mr. Wilkins exhibited symptoms of severe depression, including suicidal ideation, and received no appropriate medical treatment in response thereto.

19.     On May 16, 2014, Mr. Wilkins filled out a sick call slip, a document by which detainees inform medical staff that they have a medical problem. In his sick call slip, Mr. Wilkins

4

detailed that he was having "really bad" anxiety and panic attacks. Mr. Wilkins also detailed that he was depressed, was having trouble sleeping, and was feeling tired and weak.

20.     On May 19, 2014, Mr. Wilkins' sick call slip was triaged by Jane Doe Number One. Upon information and belief, Jane Doe Number One evaluated Mr. Wilkins and learned, through reading Mr. Wilkins sick call slip, her conversations with Mr. Wilkins, and her observation of his physical and mental condition, that he was in need of emergent medical treatment. Specifically, Mr. Wilkins was exhibiting obvious signs of depression and suicidal observation, and was in need of immediate mental health treatment. Rather than send Mr. Wilkins to the hospital or to a trained mental health specialist, Mr. Wilkins was, upon information and belief, placed on a wait list to be seen by a mental health provider.

21.     On May 20, 2014, Mr. Wilkins was evaluated by Defendant Susan Morgan, who, upon information and belief, is a Licensed Clinical Social Worker employed by Correctional Medical Care, Inc. at the Schenectady County Jail. Defendant Morgan evaluated Mr. Wilkins in response to the sick call slip he filed. Defendant Morgan directly observed that Mr. Wilkins was experiencing severe symptoms of mental and physiological distress. Specifically, Defendant Morgan observed that Mr. Wilkins had been complaining of having panic attacks, and was worried about several significant issues in his life, including his criminal case, his wife's health, and his children. Defendant Morgan also observed that Mr. Wilkins was experiencing shortness of breath, heart palpitations when panicking, and anxiety. Mr. Wilkins also informed Defendant Morgan that he had a history of mental health issues, including panic attacks and depression.

22.     Despite observing Mr. Wilkins in obvious medical distress, Defendant Morgan only conducted a "brief" mental health screening and assessment. Defendant Morgan failed to refer Mr. Wilkins to a hospital, to a psychiatrist or psychologist, and failed to provide him with medication

to treat his emergent symptoms.  Defendant Morgan also failed to ensure that Mr. Wilkins was placed under any kind of mental health supervision, which is a violation of the jail's policies and procedures.

23.    Rather, Defendant Morgan gave Mr. Wilkins literature that discussed strategies for coping with anxiety and relaxation techniques[1]. Defendant Morgan also placed Mr. Wilkin's on a wait list for Doctor Carlos Valle, who is the doctor responsible for providing mental health treatment at the jail. However, Mr. Wilkins was not evaluated again by Defendant Morgan, Defendant Valle, or anyone else at the jail before he died eight days later, on May 28, 2014. Upon information and belief, Defendant Morgan failed to inform Dr. Valle of the emergent nature of Mr. Wilkin's symptoms. Alternatively, Defendant Morgan did inform Dr. Valle of Mr. Wilkin's symptoms, and Dr. Valle failed to take action.

24.    Other inmates who were detained with Mr. Wilkins also reported that he was severely depressed prior to his death, had threatened to commit suicide on multiple occasions, and was being denied medical treatment. These inmates reported that Mr. Wilkins was denied medical treatment by staff who thought he was "faking" his condition.

25.    Upon information and belief, Ellis Hospital, including John Does 4-5, may also have been responsible for providing mental health care to detainees at the Schenectady County Jail. In fact, Ellis Hospital has previously been criticized for its failure to provide appropriate mental health care to detainees at the Schenectady County Jail. Specifically, the New York State Commission of Correction determined that Ellis Hospital inappropriately discharged an individual, Latisha Mason, on several occasions without providing her meaningful mental health treatment.

---

[1] As detailed below, Frederick Haag also committed suicide after being denied appropriate mental health care by CMC employees at the Tioga County Jail.  Despite observing Mr. Haag exhibiting clear symptoms of depression and suicidal ideation, CMC employees gave Mr. Haag similar literature on anxiety and relaxation. The New York State Commission of Corrections criticized the mental health care provided to Mr. Haag as being grossly negligent.

As a result, the Commission of Correction requested that the New York State Department of Health conduct an investigation into whether the care and treatment provided to Latisha Mason, who exhibited extreme mental health symptoms prior to her death, constituted "professional misconduct." The Plaintiff will make immediate efforts to determine if it is Ellis Hospital, or Correctional Medical Care, who was responsible for mental health care at the Schenectady County Jail, as well as the relationship between Ellis Hospital and Dr. Carlos Valle.

26.     Without having access to discovery, and upon information and belief, Plaintiff maintains that one of two alternatives occurred regarding the "care" provided to Mr. Wilkins. First, Ellis Hospital and their employees inappropriately discharged Mr. Wilkins to the Schenectady County Jail without providing him appropriate mental health treatment and/or without adequately informing officials at the Schenectady County Jail about his conditions. Alternatively, employees of Correctional Medical Care, the Schenectady County Jail, or Ellis Hospital refused to refer Mr. Wilkins for appropriate mental health care, based upon their determination that Mr. Wilkins' was faking his condition. Employees of Correctional Medical Care and/or the Schenectady County Jail may also have refused to hospitalize Mr. Wilkins, and/or provide him appropriate medication based upon a pattern and practice of making medical decisions based on financial considerations.

27.     Upon information and belief, the Commission of Corrections is conducting a full investigation into Mr. Wilkins' death because the information they received from the Schenectady County Jail regarding the circumstances surrounding Mr. Wilkins' death. This leads counsel to conclude that the commission believed that decedent may not have received appropriate medical and/or mental health care. The source of Plaintiff's belief is the Commission declined to provide information pursuant to a FOIL request made by counsel, likely because of the ongoing investigation. Additionally, the Commission will generally not conduct a full investigation into an

inmate death, unless there are facts which cause them to be concerned about the circumstances surrounding the death.

28.     Defendant CMC, together with its President Emre Umar and owner Maria Carpio (who are married to each other), have engaged in a well-documented pattern and practice of providing inadequate and unqualified medical providers at the various facilities they manage, as well as inadequate medical and mental health care in general. Included in these practices is the affirmative policy of CMC in basing its employee's salaries, and continued retention, on the number of times that they send detainees to outside medical providers. The basis for this pattern and practice is simple: Money. Correctional Medical Care takes enormous sums from various municipalities throughout New York State, some of which are provided by contracts secured through political contributions, and then provides inadequate staffing and medical care in the name of profitability. The contracts that CMC has with various county governments are "all inclusive," with every dollar that CMC pays for outside medical providers coming directly from CMC's profit margins.

29.     The Commission of Correction has previously, and repeatedly, found deficiencies in staffing and care of detainees at Correctional Medical Care facilities, including:

- Frederick Haag, Tioga County Jail – Committed suicide after exhibiting extreme symptoms of depression and suicidal ideation for months. The Commission of Corrections determined that the care provided to Mr. Haag, by an unlicensed and unqualified mental health director, was grossly negligent. The New York State Attorney General's Office also fined CMC $200,000, for failing to provide appropriate care at the Tioga and Monroe County Jails.

- Joaquin Rodriguez, Monroe County Jail – spent last five days "seriously ill … without medical care," medical care represented "gross negligence and gross incompetence."

- Maria Viera, Monroe County Jail – "inappropriate and inadequate credentialing." Use of improperly trained and inexperienced nurse to perform initial assessment of detainee, detainee later dies of drug withdrawal.

- <u>Richard Vandermark, Ulster County Jail</u> – "failure to provide a timely mental health assessment."

- <u>Alvin Rios, Broome County Jail</u> – Required Broome County Executive to "conduct an inquiry into the fitness of Correctional Medical Care, Inc. as a correctional medical care provider, specifically for its failure to implement ... policy and procedure....".

- <u>Justin McCue, Dutchess County Jail</u> – inmate committed suicide by hanging as a result of inadequate policies and procedures.

- <u>Kevin Schmitt, Ulster County Jail</u> – death by suicide. The Commission required the Ulster County sheriff to conduct an immediate review of the care provided by CMC, and recommended that they terminate their contract with CMC if they delayed making and/or refused to make any of the recommendations made by the Commission. The Commission also requested that the Office of Professions inquire into whether CMC, a corporation, was lawfully practicing medicine in New York.

- <u>John Wright, Onondaga County Justice Center</u> – death by morphine overdose. The Commission required CMC to "conduct a comprehensive inquiry into the grossly incompetent and inadequate care rendered to John Wright."

- <u>Robert Barksdale, Monroe County Jail</u> – inmate committed suicide by hanging. The Commission required CMC to ensure that their staff are properly trained and follow their own policies and procedures.

- <u>Dylan Burke, Oneida County Jail</u> – death caused by inadequate detoxification treatment. The Commission instructed CMC to "cease treating opiate/narcotic withdrawal symptomatically with palliative medications which do not provide effective detoxification."

- <u>Thomas Siewert, Dutchess County Jail</u> – inmate committed suicide by hanging. The Commission recommended "In light of the fundamental and egregious lapse of care in this case, the Sheriff, in conjunction with the Executive, shall review the status of CMC, Inc. with respect to its capabilities as a medical, and in particular, a mental health service provider."

30.    This is but a sampling of the parade of horribles wrought on helpless detainees by Correctional Medical Care, as summarized in a recent article in the Albany Times Union. *See* Alysia Santo, *Inmates Die in Cost Cut: State Investigators Cite a Pattern of Inadequate Health*

*Care Provided by For-Profit Companies at Jails,* Albany Times Union, Monday, April 1, 2013. **See Exhibit C to Plaintiff's Initial Complaint**.  (Docket Number 1). Correctional Medical Care has been sued successfully on countless occasions, both in New York and Pennsylvania regarding the deaths and serious injuries suffered by other detainees. The Commission of Correction was so concerned about the performance of CMC that it recommended to several counties that they terminate their contract, and further requested that the New York State Department of Education, Office of the Professions, take action against the company.

31.     This pattern was confirmed by the New York State Office of the Attorney General, who investigated CMC and required the company to sign a consent decree that made a number of damning admissions. A copy of the settlement agreement between CMC and the Attorney General's office is attached to the Plaintiff's Initial Complaint as **Exhibit D.**

32.     In his press release describing the settlement, Attorney General Schneiderman detailed that CMC's actions represented "substandard care and mismanagement," and that CMC was "shortchanging medical services" for detainees." **See Exhibit E to Plaintiff's Initial Complaint**.

33.     The settlement agreement further found that CMC employed "unlicensed and inexperienced staff; inadequate staffing; lack of adequate medical oversight; and failure to adhere to medical and administrative protocols and procedures" at CMC facilities. Settlement Agreement, p. 5, ¶ 11.

34.     The settlement agreement also addressed CMC's failure to pay penalties imposed against them regarding their failure to staff the Monroe County Jail with appropriately qualified medical professionals. Settlement Agreement, p. 5, ¶ 21-28. The settlement agreement found that when the penalties were paid, they were paid to the office of the Monroe County Sheriff instead

of the County Executive. Settlement Agreement, p. 5, ¶ 29. Upon information and belief, this conduct occurred at the Schenectady County Jail, in that penalties incurred by CMC for failing to employ appropriately qualified professional were paid to Sheriff Dominic D'Agostino instead of the County Executive. It goes without saying that receiving hundreds of thousands of dollars for his Department, in addition to the thousands of dollars received by D'Agostino in campaign contributions, provides a clear financial incentive for him to look the other way while his inmates die and suffer egregious injuries at his facility.

35.     The Attorney General's Office, after conducting a review of 20 medical records at the Tioga County Jail, also found that CMC staff did not "make necessary referrals to a psychiatrist or physician" and that "not one of the medical records showed evidence of a physician ... oversight, and that staff dispensed medications in the absence of medical orders." Settlement Agreement, p. 5, ¶ 10. Plaintiff believes that this is exactly what happened in this case, given Mr. Wilkins was refused treatment based upon a determination that he was faking his condition.

36.     Upon information and belief, Correctional Medical Care, Inc., is currently on probation with the National Commission of Correctional Health Care ("NCCHC"). The NCCHC regulates the quality of health services provided in correctional facilities. Upon information and belief, this fact was known to Defendants Sheriff D'Agostino and Jim Barrett before Lucky Lee Wilkins, Jr. died given the contract between Schenectady County and CMC expressly requires CMC to take affirmative steps to improve the quality of their health care in order to address their probationary status. Upon information and belief, the reason why CMC is on probation with NCCHC is because of their chronic failure to provide adequate health care to detainees in all of their facilities.

37.     Regardless of this pattern of misconduct, Lucky Lee Wilkins, Jr. would be alive had he received adequate psychological counseling.

38.     During all times mentioned in this Complaint, the Defendants were acting under color of state law, that is, under color of the Constitution, statutes, laws, charter, ordinances, rules, regulations, customs, and usages of the State of New York, Schenectady County, Ellis Hospital and Correctional Medical Care, Inc.

39.     Correctional Medical Care, Ellis Hospital and their employees were also operating under color of state law, in that these defendants are performing a function traditionally reserved for state and/or municipal agencies, and as such are equally responsible for the violation of civil rights as if they were state actors.

40.     The Defendants, at all times mentioned in the Complaint, either knew or should have known that their actions violated clearly established law protecting the Constitutional and statutory rights of the Plaintiff.

**CAUSES OF ACTION**

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS**

**Violation of Constitutional Rights under Color of State Law**
**-- Deliberate Indifference to Serious Medical Needs—**

41.     Plaintiff incorporates by reference and realleges each and every allegation stated herein.

42.     The Eighth Amendment to the United States Constitution precludes prison officials from willfully denying medical treatment to a detainee with serious medical needs, as such conduct

would constitute cruel and unusual punishment and/or a violation of the right to due process of law.

43.     The actions of the Defendants detailed above violated Lucky Lee Wilkins, Jr's rights under the United States Constitution. In short, it was not objectively reasonable for the Defendants to ignore decedent's serious medical problems, including his symptoms of depression and suicidal ideation. It was also not objectively reasonable for the Defendants to refuse to provide him with appropriate, necessary medical treatment, including appropriate mental health care. In fact, the Defendants' actions demonstrate a deliberate indifference to decedent's serious medical needs.

44.     All of the Individual Defendants were acting in their capacity either as policy makers and/or medical staff of Correctional Medical Care and Ellis Hospital, companies contracted to provide constitutionally mandated medical treatment and therefore acting under color of state law. As such their actions and inactions also represent a violation of 42 U.S.C. § 1983.

45.     Schenectady County is directly responsible for the actions of Correctional Medical Care, Ellis Hospital, and their associated employees, as the County cannot delegate its constitutionally mandated responsibilities to provide adequate healthcare to jail detainees.

46.     Defendants' actions were motivated by malice and/or are grossly negligent.

47.     As a direct and proximate result of the unconstitutional acts described above, Lucky Lee Wilkins, Jr. was irreparably injured when he died. The Plaintiff expressly seeks damages for decedent's loss of life.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST CORRECTIONAL MEDICAL CARE, INC., ELLIS HOSPITAL, CARLOS VALLE, EMRE UMAR, MARIA CARPIO, DOMINIC D'AGOSTINO AND JIM BARRETT

### --Implementation of Municipal Policies and Practices that Directly Violate Constitutional Rights/ Failure to Implement Municipal Policies to Avoid Constitutional Deprivations and/or Failure to Train and Supervise Employees under Color of State Law--

48.     Plaintiff incorporates by reference and realleges each and every allegation stated herein.

49.     The Eighth Amendment to the United States Constitution precludes prison officials from willfully denying medical treatment to a detainee with serious medical needs, as such conduct would constitute cruel and unusual punishment and/or a violation of the right to due process of law.

50.     Upon information and belief, the above-listed defendants, through express policy, practices or the inactions of its policy makers, had a policy and/or practice of not providing appropriate medical care to detainees at the Schenectady County Jail and, for Correctional Medical Care, many other local jails across the State. Specifically, these defendants failed to adopt appropriate policies regarding appropriate supervision and/or screening to detainees at the Schenectady County Jail who were in need of closer supervision because of mental health problems, as detailed in the facts provided above. It is well established that county jails must have appropriate policies in place to prevent mentally distraught detainees from killing themselves, including placing them in a state of constant supervision and/or providing them appropriate medication. This policy is evident given the decedent was denied mental health care based upon the determination, upon information and belief, in the absence of any meaningful evaluation, that he was faking his condition.

51.     Upon information and belief, one reason why Lucky Lee Wilkins, Jr. failed to receive adequate medical treatment was because of concerns by the above-listed defendants regarding the expenses involved in properly caring for him and other detainees.

52.     As a direct and proximate result of the unconstitutional acts described above, Lucky Lee Wilkins, Jr. was irreparably injured when he died. The Plaintiff expressly seeks damages for decedent's loss of life.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

### Violation of State Law
### -- Conscious Pain and Suffering/Wrongful Death--

53.     Plaintiff incorporates by reference and realleges each and every allegation stated herein.

54.     The actions of the Defendants detailed above detailed above represent a claim for conscious pain and suffering and wrongful death under the laws of the State of New York. Specifically, the medical care provided to Lucky Lee Wilkins, Jr. by the Defendants was clearly negligent; in fact it was grossly so.

55.     The Plaintiff further asserts a claim for conscious pain and suffering against all Defendants, as well as a claim for loss of companionship for the children of Lucky Lee Wilkins, Jr., in addition to a claim for wrongful death.

56.     Additionally, Defendant Schenectady County is directly responsible for the actions and inactions of its various employees taken in the scope of their employment, and is consequently directly responsible for decedent's wrongful death and conscious pain and suffering.  Correctional Medical Care and Ellis Hospital are similarly responsible for the conduct of its employees.

57.     As a direct and proximate result of the illegal acts described above, Lucky Lee Wilkins was irreparably injured when he died.


## DEMAND FOR PUNITIVE DAMAGES

58.     The actions and inactions of all Defendants (with the exception of Schenectady County) detailed above, especially when considering the pattern of misconduct by Correctional Medical Care and Ellis Hospital in causing the deaths of several detainees, are extreme and outrageous.  The Plaintiff does not seek punitive damages against the County of Schenectady.


## DEMAND FOR TRIAL BY JURY

59.     The Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gail Helijas requests that this Honorable Court grant her the following relief:

A.      A judgment in favor of Plaintiff against all Defendants for compensatory damages in an amount to be determined by a properly charged jury;

B.      A judgment in favor of Plaintiff against all Defendants, with the exception of Schenectady County,  for punitive damages in an amount to be determined by a properly charged jury;

C.      A monetary award for attorney's fees and the costs of this action, pursuant to 42 U.S.C. § 1988;

D.      Any other relief that this Court finds to be just, proper and equitable.

Respectfully Submitted By:

/s Elmer Robert Keach, III

Dated: December 28, 2015

_____
Elmer Robert Keach, III, Esquire
Maria K. Dyson, Esquire
LAW OFFICES OF ELMER ROBERT
KEACH, III, PC
One Pine West Plaza, Suite 109
Albany, NY  12205
Telephone: 518.434.1718
Telecopier: 518.770.1558
Electronic Mail:
bobkeach@keachlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

17